Okay, the court's next to hear Federal Trade Commission v. Innovative Designs, Appellate No. 20-3379. Counsel, you may proceed. Good morning, Your Honors. May it please the Court, Imad Abiad for the Federal Trade Commission. I'd like to reserve five minutes for rebuttal. The issue before you is whether the FTC made out a prima facie case of deceptive marketing under the FTC Act. Absolutely. At a minimum. I'm aficio. Weren't you at trial? It was, but the trial was cut off right after the case in chief. What are the elements of your cause of action? I'm sorry? What are the elements of the cause of action? So to prove deceptive marketing under the FTC Act, you need a representation that is material and that that representation is either false or deceptive. The first two elements are not contested. What exactly is the representation that we're to examine to see whether it's deceptive? Absolutely. So there are three different representations that IDI made to consumers. First, it said its product has R3 or R6 insulation rating. Second, it said that those R ratings are based specifically on the ASTM C518 testing. So the first representation was a nonspecific establishment claim, correct? Correct. And the second was a specific establishment claim? Absolutely, correct. So what did you have to prove for each of those? And maybe there's a third one, you said? The third one is that using their product would save consumers money. Efficacy, basically. Correct. So let me start with the easier one, which is the specific C518 claim. IDI told consumers that its R ratings were based on this particular test. What was based on ASTM? On ASTM C518. Exactly. As the district court found correctly, that means that IDI had to prove that it had ASTM C518 tests that show R3 and R6. The problem is IDI admitted before the district court in its stipulations that such testing never returned those ratings. That didn't say standardized ASTM, though, did it? It said ASTM. And isn't the whole issue in this case what is permissible and what would the scientific community say ASTM really means? And the district court said, well, there allows innovation. Not exactly, Your Honor. That relates to the nonspecific claims where you have to first show what is the required substantiation standard in the relevant community. Why doesn't it relate also to the specific claims? Because the reference to C518, it could mean, as is your argument, that it has to be the standard version without any air gaps. But as the district court recognized, it could also mean that there's some modified version that has been has been implemented and that that is still compliant with C518. So why are there two different meanings here that you dispute about what C518 requires and the burden remains on the agency to show that either one of those is the only proper interpretation or that it was deceptive under both? I have three three responses to your honor's questions. First, on specific establishment claims, the law says the marketer has to have the standard that it advertised. So if you were a consumer and you say and you see ad that says our product meets C518. Are you supposed to understand that the C518 might include air gaps? What if it's not air gaps? What if they in fact tested it with two foot blocks of insulation on either side? They did not tell consumers that what they used was a modified C518. They said C518. So the law says they have to have what they advertise. They advertise C518, not modified C518. Well, if you had consumers and you had evidence to that effect, that consumer or maybe commercial person reads ASTM C518, it says, ah, it's within the four corners of this ASTM standard. It's a standardized ASTM. If you had evidence that someone was deceived in that way, then that would be something. But we're left not to know whether ASTM to the common person means, okay, research has produced a different thing that's allowable. And maybe your own expert, and maybe this creeped into the consciousness of the district court judge, your own expert said, well, yeah, air gaps, okay, that would satisfy it. That creates a big question mark. And let me get to that question in a second. But let me point out first that under the FTC Act, going back to American Home Products from the circuits, actual deception by the consumer is not a requirement for a violation. No, but it would certainly raise the issue. It would. But you're certainly also entitled to read C518. Does that mean it could include insulation on either side? Could it include air gaps? Let me get to the point of the air gaps. But you don't even have to show us what it means. Isn't it the FTC's burden to show that C518 only has the meaning of the standard version without air gaps? In fact, that's what the district court found, Your Honor. When the district court was made the finding for what the substantiation standard is for the nonspecific, which is they have R3 and R6, it found that the right standard is the C518 as incorporated in the R value rule. And it also said that if the testing that is used for substantiation deviates from either the C518 or from the R value rule, which completely prohibits air gaps, it needs to be well explained. That's by the expert. That doesn't have to be well explained by the defendant. That well-explained language comes from a case that is evaluating an expert's testimony. That's an expert question. That's not what that case law – that case, that well-explained language is citing back to experts. Even if it was the experts, Your Honor, it would be the defendant's expert.  So you're shifting the burden of proof. And this goes back to something that Judge Krause said to you earlier. The burden of proof stays with the government in a case like this. The burden of proof is – The overall – absolutely. So isn't the burden of proof to show that the substantiation offered by defendant would not be satisfactory to the relevant scientific community? No, Your Honor. You are claiming that is the burden on the defendant? No, no. But let me –  That's what I want to talk about first. Absolutely. So the way the framework works, the FTC first has the burden of showing what is the standard in the scientific community. Okay. That's step one. Step two, defendant offers substantiation. Okay. We're at trial. Come with me. We're at trial. No stipulations. Okay, no stipulations. You come to court, right? You're saying that the government's burden of proof in its case in chief is this is the relevant test that needs to be applied. I rest. No, no, no. Sorry, I did not finish my sentence. Go ahead. So we have to show the standard of proof – the standard of substantiation in the relevant scientific community. They have to show the substantiation that at least purportedly meets that. Then it's our burden to show it does not meet that. So, okay, we're at trial. Not in summary judgment land, we're at trial. Government stands up. This is the substantiation that's required in the scientific community. Government stands up and says during the course of discovery, defendant represents this is the test that they used, correct? Correct. Then the government continues to maintain the burden of proof to show that standard would not be acceptable in the scientific community. Do you agree with that? Absolutely. So you bear the burden of showing that that modified test was not acceptable. Correct. Do you agree? It is not acceptable in relation to the standard that was set by the court. The court set the standard as the C518 without the air gaps. Wait a second. The code says – it says without the air gaps, and then in subsection E it says we incorporate by reference the standards, the ASTM standards, and you go to C518, and there's a section in C518 that says, well, here's the standard, but we're going to allow for innovation. Fair enough, right? But I'm talking about what the district court finding was. If the district court found the standard is C518 without air gaps. But I'll give you the air gaps. Okay. Because you conceded the air gaps in matter and trial. The air gaps are allowed under C518. It's not allowed under the R value. But let's say it is. Let's assume that testing with air gaps is, in fact, a valid scientific method. That still makes their claims deceptive because they didn't account for the air gaps. Air is, in their own words, an excellent insulator. But doesn't that make an assumption about what a reasonable consumer would understand about C18? Or, at a minimum, what is understood in the industry as the meaning of C518? No, Your Honor, you don't have to go that far. If I say my product is rated R3, if I'm a consumer, I would understand that to mean that the R3 applies to your product. It does not apply to your product plus three-quarter inch of air on either side. That's what they tested. Well, Ms. Johnson conceded that before the district court. Conceded what? That air gaps. The issue was not air gaps. And air gaps could result in an accurate R measurement if you know what you're doing, right? What we conceded below, and it's true, that testing with air gaps could satisfy the C518. We're not talking about whether C518 is deceptive or not. We're talking about their claims. What they said was, our product is rated R3. The testing that they showed was not for their product. It was for what is called an assembly of their product plus air gaps on either side. Like I said, if instead of the air gaps, they had sandwiched their product with other insulation material. And they said, our product is rated R3. If I'm the consumer, I would understand that the R3 applies to your product. It does not apply to your product plus insulation on either side. That's what the air gaps are. They are insulation on either side of the tested specimen. So their claims would still be deceptive, even if the air gaps testing was valid. That's one. Two, with all due respect, Judge Schwartz, I totally agree that the, excuse me. It's coming. He's going to say something. It's coming. With all due respect, I'm ready. That in the Zoloft case, that the statement about modifications have to be well explained, it was applied to the expert. Correct. But the question is, who's expert? If I modified a test, it's not the other side who has the burden to explain it. I did the modification. But we just went through the trial. And if you got the case in chief, and at your case in chief, if you're going to embrace it's not well explained, it's the government that bears the burden of explaining it's not well explained. It's not, you're not going to wait for the defense to do it. Yes, but we said that because they have no way of explaining it. We showed that too. But that case had to do with the expert opinion. Fair enough. So it's really an opposite here. It is. There's no expert opinions here. Fair enough. None. Zero. But if I, but, Your Honor, if I said, if the district court, as it did here, if the district court said in order for you to justify these marketing claims, you have to have this test, right? Then here comes the marketer and say, okay, the testing I did was not this test. It was modified. Right. Which is permissible. Is it not? It's not, in fact. Well, it says right in the rule, even though it's standardized, you can have modifications. The modifications, Your Honor, we also went through this. The modifications are not meant for an individual marketer to change the standard. We don't know that. Now, if you had evidence to that effect, an expert to say, when we say ASTM, that does not permit modification. But you didn't have an expert to say that. And, in fact, your expert kind of opened the door to the idea that air gaps are probably okay, probably ASTM. Again, I go back. Even if you give IDI the air gaps, even if the air gaps modification was valid, their marketing claims are still deceptive. They did not account for the air gaps. That depends on the meaning of C-518. Right. No, no, Your Honor. And don't you need expert testimony that when the reference is made to C-518, that that would be understood as excluding air gaps? No, Your Honor. You're looking at the standard, but the deception is in the claims, in the marketing claims. Again, if IDI told consumers, my product has R3 rating, the consumers should understand perfectly reasonably that the R3 rating applies to my product. It does not apply to an assembly of my product sandwiched by other installation. We don't have proof of that. That's what their stipulation said. But we don't have someone who says when you put air gaps, it takes it totally out of 518. No, it doesn't. I'm not saying it takes it out of 518. I'm saying the air gaps means that the R3 rating did not actually reflect the insole text. We don't know that. We don't have any expert testimony on that. There's no evidence of that. You don't need expert testimony because it's in their stipulations. They said all of their testing was on insole text with three inch, three quarter inch air gaps on either side. That's not insole text. But FTC counsel, as well as your own expert, acknowledged that at least the non-specific establishment claims that the general scientific community accepts that you can have air gaps and still have an accurate reading, right? If you account for it, absolutely. For example, one of the standard methods for testing thin materials is you take the thin material, you sandwich it between another material that you already know the R value for. You test that assembly. You take out the R value for the pieces on either side. You're left with the R value for the material you wanted to test. It's a standard testing called sandwiching. That's exactly what they did here. The problem is they did not account for the air gaps. They left. Stipulation to the effect that they did not account for that? There is no effect. There is no record. There is no record evidence at all. Okay. So there's no stipulation that they didn't account for it. Perhaps they did. And if they did, then that's fine. Perhaps they did. They could show that on their defense. But as far as the prima facie case is concerned, all we have to show is they told consumers our product has R value of 3. It turns out the R value of 3 did not account for just their product. It also had insulation on either side. But if they did account for it? If they did account for it, we would be in a completely different situation. So you need an additional stipulation to the effect that they didn't account for it, don't you? If we had that, we would not be just on a prima facie case. We would win the case entirely. What I'm saying is we satisfied our prima facie burden of showing their advertising and their testing don't match. If we conclude that you would need expert testimony to do that, just to confirm, you have not appealed here? We do not rely on the expert testimony, Your Honor. Correct. What the district court did is, in fact, change the burden of proof. Because it said you cannot show X, whatever that X is, you cannot show X without expert testimony. But the best evidence you can have is a party admission. If I have a party admission that shows X. I think where Judge Ronell's questions were going and where some of mine were also headed is, you are surmising something from the stipulation that we don't see. The stipulation is our R value is 3. We don't have a stipulation that says the R value is influenced by the existence of the air gaps. Absolutely, Your Honor, we do. The stipulation would say the R value is a misstatement because of the presence of the air gaps. Okay. I mean, we may need to use some common sense here. I can't use common sense. I don't have any common sense in the world of insulation. I'm sorry, but fair enough. It's construction day at the Third Circuit, apparently. It is. It is indeed. But the Supreme Court in the Indiana Federation said we are entitled to rely on common sense. What common sense? Where would common sense from someone who's not living with insulation in the installation world or ferreting out deceptive practices world would know that a representation of R3 with a test that used air gaps would mean the air gaps influence the R3 value? Okay. So if I say what their stipulation said is we tested our material, right? We tested it with air gaps on either side. We got R3. That's in the stipulation. I'm with you. Right? You didn't say we failed to account for those. It does not say that. Right. In order for you to have a home run, according, you need to have that agreement. Absolutely. But we're not looking for a home run. We're just trying to get to first base. Okay. Okay. This is a prima facie case judgment. We're not, if they do have evidence that they accounted for the air gaps, they are perfectly entitled to put it on. Fair enough. But what you do have is their acknowledgement that they represented as R3 and the way they conducted their C518 test, and then in paragraph 35 that a standard C518 test constructed on a single layer never returned a value of R3. Correct. But don't you need to move forward, don't you need one step further to show that the standard ASTM 518, that the meaning of that, that it excludes a modification? No, Your Honor. We don't need that. Again, you pointed out the exact relevant stipulations. They said a standard C518 never returned an R3. They said we use the modified C518 with air gaps on either side. We got R3. What do you think accounted for the R3? They stipulated without the air gaps. They never got R3. They used air gaps. They got R3. What would account for the R3? It's the air gaps. That's what accounts for the R3. And it's not this. It really is not. It would be permissible if they accounted for it. If they accounted for it. Fair enough. If they had, they could have, they could have satisfied their burden with one of two things. They could have told consumers, we tested our product. We tested it in a machine that puts air gaps on either side. And we got R3. And so when you install our product, make sure you have three quarter inch air gaps on either side. That's how you get the R3. They didn't do that. First, they didn't tell consumers that they used air gaps. And worst, they told consumers, you install our product flat and tight. Don't leave any air gaps. Okay. We'll hear you back on rebuttal. Thank you. Okay. May I please the court? Anthony Patterson on behalf of Innovative Designs. Your honors, I would like to start by just making a real brief statement that what this case boils down to is that when you have a defendant who is using a test report from an accredited lab as substantiation, the FTC has to, they are required to, put on expert testimony to show falsity. Well, what's your case site for that? Well, the burden. Remember the case of OD that we've decided you really don't need expert opinion. Well, they need expert opinion to prove falsity when we're dealing specifically with test reports. Do you have a case for that? I'm sorry? Do you have a case citation for that? I do not, your honor. The general burden. That's pretty important. I agree, your honor. The general burden is on the FTC to prove falsity. That's one of the three elements that is in dispute. Maybe they need an expert for the nonspecific establishment claim, because that goes to what's understood in the general scientific community. But for the specific establishment claim, that is, that the testing was done consistent with C518, there are stipulations that provide, where you've agreed that the standard C518 test didn't return an R3 value. Yes, your honor. The standard C518 test is a contact test. There's many reasons why a contact test doesn't work on a film. But given that stipulation by your client, why isn't that sufficient for the FTC to move forward in the case? There are several reasons. Because this indicates that in making the representation that the testing was C518 testing, that that was false. That standard C518 testing, which is what the FTC says anybody with common sense would look at and understand C518 means standard C518, which precludes air gaps. It wasn't done that way. You represented that it was done that way as the specific establishment claim. Why isn't this stipulation sufficient for that? Because several reasons. C518 anticipates modification. So in and of itself, modification is built into the standard. In this specific case. Wait, wait. It's a standardized test, and it says standardization. It's a standardized test, correct? There is a standard for the C518 testing protocol that allows for innovation. Well, it allows for not innovation. It says it can be changed as research provides. Doesn't that anticipate research and some change in the rule that's the result of research compared to just doing something totally different from what the test requires? Honestly, I don't know. But when you read it, it says that innovation is allowed. In our case, we went to a lab. We went to an accreditation. We went to a lab. The lab became accredited by Perry Johnson. You hunted around and finally found a lab that would do air gaps. Well, Perry Johnson accredited, and their deposition transcript was entered into evidence, and they stand by the accreditation that BRC was accredited specifically to conduct this modified test. Okay. You advertise your product telling installers install it flat and tight. Yes. With no air gaps. Yes. Okay. You say it's ASTM C518, but that says, you know, you have air gaps. How can that be? How can you tell your installers to install it in a way different from and that has an R3, R6, when you know it's not going to have that when it's installed? Well, we don't know that. Well, you do. You found that out from the standardized test. It's smooth and flat. Well, I think we need to clear something up, and that's the air gaps. Our contention is not that we measured the R value of the air gaps. Our contention is that the BRC machine reaches steady state. When it reaches steady state, the air gaps become the same temperature as the hot and the cold plate, which means they have an R value of zero. We're not measuring the air gaps. Excuse me. That can't stand in relation to paragraph 35, which paragraph 35 of the joint stipulation concedes that the standard C518 test does not return an R3 value. A contact method test is unreliable, which was agreed to by their expert. It's unreliable. That's part of the reason why the trial court threw out the expert. How can you represent, let's say, STM C518, when a contact test is unreliable? You should say, we didn't do C518 because that's unreliable. We did our own. Well, we didn't just do our own. We did an accredited method under C518 that allows for modification. And we have an accreditation company that looked at our method and they said, yes, this comports with C518. We're going to accredit you for C518 modification. Who's in the burden on the FTC? That may be sufficient for a nonspecific establishment claim. But their specific establishment claim is that in representing you conducted the test as a C518 test that any reasonable consumer would understand that that's standardized. And, in fact, you modified it. And when your certification company realized what had happened, it required that you say that it was modified and make the disclosure that it was modified and not a standard C518 test. But why don't we have objective falsity when you're representing C518 was the test used when it was not a standard C518 test? Because they would require expert testimony to come in and say that we're not comporting with C518. We're not following C518. It doesn't follow C518. You agree it doesn't follow the standard C518? I do not. I agree that we didn't do a contact method test, which is what the standard C518 test is. But when the standard itself allows for modification and we modify it and the modification is accredited by an accreditation company, I think that we are comporting with C518. If your ad is capable of being interpreted in a misleading way. I'm sorry? If your ad is capable of being interpreted in a misleading way, shall we not construe it against you? No, because it's not. What has to happen is the FTC ultimately bears this burden. When we come in and say we have a test report from an accredited lab for the modification that we did, the burden shifts to them to show that it's false. That's the way this is set up. That's the basic case law of the elements. That's what they're required to do. But it makes perfect sense for a nonspecific claim. I'm still not following how that relates to a specific establishment claim that you are conducting a C518 test. Because the very language of C518 allows you to modify it. Well, you're hanging your hat on this one provision that says it can be, find it here. Yeah, okay. 1.11, standardization of this test, i.e., this is a standardized test, is not intended to restrict in any way the future development of improved or new methods or procedures by research workers. Is that what you have here, that this air gap is an improved or new method that a research worker has come up with that would be an addendum, if you will, to this test? We have a lab that determined this was the method to use that was accredited by an accreditation company on the method. Because C518 doesn't really relate to smooth and contact film, does it? A contact test method on a thin film provides unreliable results. Okay, so how do you say ASTM 518 produced these results? Because we used a modification that was approved and accredited. But when did you first disclose that it was a modification? When in the advertising? When in the advertising? I believe later in the advertising there was a disclosure that it was a modified method. I don't think they went into detail of the exact testing procedures, but I don't think – Prior to that, the test being done was actually a modified test, but it wasn't being disclosed as a modified test. Correct, because it still comports with C518. So it's your position that your company's representation was not deceptive because once one says the testing occurred consistent with C518, that includes both the standard and any modifications contemplated? Yes, Your Honor. Plus, I mean, you have to make a determination, I guess, as to whether that's material. I think we've agreed that – I understand his materiality is not in dispute. Yeah, but at the end of the day, you know, we have to also look at the fact that there's nothing in the record about any of this, okay? If they come in with an expert and says he didn't comply with C518, then we have a different issue. I think the evidence was actually to the opposite, that air gaps can comply with C518, and I think their expert said that. I think the FTC admitted that. Yeah, the presence or absence of air gaps doesn't seem to be at issue. Their position is that the fact that the test results did not account for the air gaps made your client's representations false. See, and that's not part of the record either, and that's important. We're not measuring the air gap. Our position is we don't measure the R value of the air gap. We're just measuring the material itself. Do we know that from the record? We do not know that from the record. Kelly, your position is had that been in the record one way or the other, the district court could allow this case to go to a judge. Yes. If the expert comes in and says that the air gaps are, that our testing is measuring the air and the air gaps, and because of that it's false, then we have a different issue. So that goes to whether it's tested and whether it's R5, right? Again, that's the nonspecific, that you achieved R5 consistent with the scientific community. Yes. Okay. But we have a stipulation in the record, although not expert testimony, that the standard C518 test doesn't return the result that you're representing. Yes. And you agreed earlier you weren't conducting a standard C518 test. You were conducting a modified C518 test. Correct. So is it your position that when there is a representation that testing was done consistent with C518, that that actually means anything that a defendant decides to do in changing the test? No, Your Honor, because, again, I believe the FTC is required to show that the testing doesn't comport with C518. And I think you need expert testimony to do that. So by saying that you were testing consistent with C518, that if you've done something that is completely different, you've actually put walls and walls of other insulation in, that that is an accurate representation because C518 makes the reference to ASTM, which makes a reference to the ability for future researchers to conduct improved modifications. I don't know where the line is drawn, but I know that in this situation where the modification has been accredited, that that is something that would comport. I think it requires expert testimony. I think the FTC has to come in and say, okay, they have a modification. It doesn't comport with C518 because it's too far, it's too outlandish. It's too far. And that's sort of, I think, where Judge Cross is beginning to go. The way that this scenario comes up is the FTC finds somebody who they think has made a misrepresentation. That entity, the advertiser, then comes up and produces something and says, see, here's my substantiation for my claim. Yes. Does the advertiser at that phase, we're not at trial, but at that phase have to demonstrate that that is acceptable in the scientific community? Or could they just produce anything, then the FTC can go off and try the case and have to then prove that your advertiser's substantiation is not supported by the scientific community? I think the first step is that the FTC has to put out what is the substantiation. In this case, substantiation standard in the industry is C518 test. Okay. At that point, the burden is on us to show what our substantiation is. And so that's happening in what phase? We're at pretrial, right? Because you're not, there's this burden shifting that you folks have been talking about in your briefing and here in the courtroom, but with this case, there wasn't a trial. So are you suggesting that if an accusation is made at the complaint stage, your advertiser's obligation is to then produce in discovery its substantiation, am I correct? Yes, correct. And would you have to show at that point your bona fides for why it would be acceptable in the scientific community? Would this happen on the pretrial phase at discovery? And we do that on its face with a test report from an accredited lab on a C518 test, which the FTC agrees is the substantiation's case. And I think it's important to point out that the FTC stipulated that we relied on a C518 test as substantiation. I think that stipulation gets me where I need to be. Did your testing company know how you intended, how you were telling people to use the product? I believe so. I don't know if that's in the record, but I believe they did, yes. Doesn't the FTC stipulate you conducted a modified C518 test? Yes, and that we relied on that as our substantiation. So, again, we have, there are two representations here. Yes. One is that you have an R3 and R6 value. Yes. And in conducting a modified test, you're saying we have substantiated the R3 and R6 value. Yes. And they can't disprove that without expert testimony. Yes. So let's put that to the side. There's another representation, which is that you, what you conducted was a C518 test. And they say, well, that means you conducted a standard C518 test. It has to mean standard C518 test to any reasonable consumer, because otherwise there'd be no meaning whatsoever to C518. It would be any modifications you want to make. And you have stipulated that you did not conduct the standard C518 test. Correct. So why isn't this stipulation sufficient on that misrepresentation? Not the scientific community, whether modified test produces R3, but that you in fact conducted a C518 test. Because we did conduct a C518 test. But you said C518 won't work with your product, correct? Well, I said a contact C518 won't test. And that's what it is. Won't work. And it says that a modification would work. At 7.4.2, it says you have to smooth that out. And if it doesn't work, then you're out of C518 altogether, aren't you? Well, no. Not at all. I mean, when the actual rule allows you to modify it, and we use someone and we go to a lab and they modify it, and that gets accredited, that's the modification. Well, there's modifications, and then there's modifications. But don't you have to have a modification that would be consistent, at least consistent with the essence of C518, which is a contact-related product? And we do. We do. We do, Your Honor. We have a hot and cold plate that's pushing air through the product and measuring the airflow and the thermal conductivity through the product. The only thing that's changed is we use an air gap. And our contention has been that the air gap has a zero R value because we allow the machine to reach steady state. We're not measuring the air gap. And if I could say one last thing. I know my time's up, and I just want to be able to say one thing. If you require the defendant to prove the truth of the testing reports, the way this trial would have gone then is that the defendant has to go first. The defendant would have to get up and say, we have a test report from an accredited lab. We have to put on an expert to prove that. And that's not the way our civil justice system works. We don't bear the burden of proving the truth of the lab report. They bear the burden of proving its falsity. Thank you. Thank you very much. If I may start by just pointing out a couple of things that I think are incorrect about what my opposing counsel said. First, on the accreditation, the PGLA, that it accredited the modification. If you look in our brief at footnote 14, we point to the exact location in the PGLA deposition where they said they were unaware of the air gaps. The modifications they were talking about were the modifications that I mentioned before are standard in the industry, that you can use sandwiching. You can put the material between two known R value material to figure out how much it is. That's what they were talking about, not the air gaps. That's one. Two. Do you have a citation to that? Yes. It's in our brief at footnote 14, Your Honor. It's PGLA's deposition transcript at 118 to 119. That's in the appendix pages 267, 268, and 277. And why is that relevant? Because that's all he was relying on. All he's relying on. You're talking about the certifying entity? Who is the entity? I'm sorry. No, I'm sorry. I meant IDI. All that IDI is relying on is we got this test that some certification body said it was okay. And so that leaves us of all burden to show that the test is actually accurate. But we're at trial. Isn't the obligation of the government to show it was inaccurate? And we did, Your Honor. We had to show a prima facie case of inaccuracy. In your prima facie case of inaccuracy, I just want to make sure I understand your argument, is that because they didn't use the standard 518, that's why that's inaccurate? No, not because. What is your theory? What is it that you say you showed? Because all we have is the stipulation. That's the only evidence in the record. All you need is the stipulations. I understand that. The stipulation is the evidence. But what is it that makes this false in your prima facie case? Okay. That the stipulations say we tested the material using standard C518. We never got R3. Okay. We tested the material with air gaps. We got R3. I understand. Okay. Thank you. Go ahead. So that's on the PGLA accreditation. He says that the falsity of the test needs expert testimony. That may be the case. But our burden is not to show that their test results are false. It's to show that their claims are false. But the claims are based on the test results, no? I'm sorry? Their claims are based on what they proved as test results. But if we have party admissions that show that the claims are false, we don't need expert testimony. How is it that we can say that a modification with air, the modification, he's relying on modification. Right. And you're saying air gaps is not a permissible modification. How do we, how do you say air gaps is not a permissible modification? And that when you say C518, well it can't mean with air gaps. Like I said, Your Honor, we will grant you the air gaps. The problem is not the air gaps. We agree air gaps are not really what the modifications in the standard is meant to be. It's meant to be for standard setting bodies, for research workers to develop the standard. It's not meant to be for individual marketers to come up with their own way to satisfy the result that they need. So as a matter of law, you want us to read that modification provision to be not just any modification but research based? That's what the language says. The language says. And when their accreditation person who accredited didn't know about the air gaps, then that's not. Even if they knew about the air gaps, that's not really the intended purpose of that language in the standard. It's meant to be that the standard can be developed by researchers that then come together, they peer review their studies, they come up to a standard setting meetings and come up with a new standard. That's what it's meant to be. It's not meant for any manufacturer to make up their own tests and say, here we go. It's modified. It says we can modify it. But doesn't the government have the burden of showing that that modified test is not worthy of any kind of credit? If it was the only thing that would get us to first base, yes. But it's not. We don't need the expert testimony because we're granting them the air gaps, the air gaps using air gaps. Let's say it is justified. Right. What is not justified is that your ads and your results don't match. You tested with air gaps, but you didn't say you tested with air gaps. You told consumers my product is our value three. But the RFID was not for my product. It was for my product plus air gaps. Again, imagine if instead of the air gaps, we had some fiberglass insulation on either side. Their ads would be exactly the same. We have R3, except the R3, they got it by sandwiching their product with insulation on either side. That can't be right. The specific establishment clause claim with which you take issue is they represented that they had. They, in fact, conducted it with air gaps. And the representation was that they did not conduct it with air gaps. Correct. You are on the specific claim. I'm sorry. Did they say they represented they didn't conduct it with air gaps or they didn't disclose they can. They did not disclose. They said. And that requires us to understand the representation that they conducted consistent with C518 to mean that they conducted it without air gaps. I think what you need, to the extent you need to take anything from the language C518, is that you need to take from it, it was based on C518, not modified C518. It seems to me a perfectly reasonable reading of the language that when we say our tests are based on C518, that it's based on the standard C518, not on a modified C518. And on that, just on that specific claim of the C518, in fact, I think we not just have a prima facie case, we win on liability on that. What do you take of opposing counsel's assertion that when you have a test result like this, you need expert testimony? If we have to, there are two ways for the FTC to win on liability. There is what they call the falsity claims. We used it for the specific C518. We proved it was false. But we proved it through the stipulations. The other way to do it is to say that they do not have a reasonable basis for their language in the ad, for their claim. That's the substantiation theory. The substantiation theory, this court has not really set out the framework like its sister courts have. But the sister court, the other courts are basically unified on this. The framework is the government shows what is the acceptable substantiation. The burden shifts to them to show they have that substantiation. You have to show it's the only acceptable substantiation. And don't you need an expert to say what you're proffering right now, that when you say ASTM, it has to mean within the four corners of this, not as modified? In this case, Your Honor, we don't need that because we have a district court finding that's uncontested. They did not contest that finding. The district court said the standard of substantiation required for their claims is C-518, as set out in the R-value rule, which expressly prohibits air gaps. So the only reasonable way to read the finding is that it meant it's the standard C-518. That's what's required. The burden shifts to them to show one of two things. They can show they have that, they meet that standard, and they admit it that they don't. Or they can show that, no, we have a modified standard, but it is acceptable. It would be their burden to show that it's acceptable. Through experts or others. But the district court said your claims were false. I'm sorry, go ahead. I'm sorry, because you didn't have certain testing results. The FTC has not proffered any expert testimony to show BRC's testing did not conform with the ASTM C-518 standards. Right. I can't make sense of that language, to be honest, Your Honor. Well, it says the standards permit innovation. Thus, the stipulation's not dispositive. Okay, so fair enough. That would be the stipulations as far as the modification, as far as the air gaps are concerned. We dealt with that separately. Again, we will concede to them that air gaps are valid, even if that's fine. On the nonspecific establishment claims, even if you concede that the air gaps, that the modification is a valid modification. Tell people about the air gaps. They have to tell people that we tested it with air gaps, and you should install our product the way we tested it. I see my time has run out. Colleagues have any other questions for you? Judge Riddell? Judge Cross? All right. We thank you for your arguments. We thank both counsel for their excellent briefing and arguments, and we'll take this matter under advisement.